IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TYRONE PEELE,  )
        Plaintiff  )    C.A. 13-200 Erie
  )
     v.  )
  )    Magistrate Judge Baxter
ULLI KLEMM,  )
        Defendant.  )

# OPINION AND ORDER[1]

United States Magistrate Judge Susan Paradise Baxter.

## I. INTRODUCTION

### A. Relevant Procedural History

Plaintiff Tyrone Peele, a prisoner incarcerated at the State Correctional Institution at Forest in Marienville, Pennsylvania ("SCI-Forest") initiated this action by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, on July 8, 2013 [ECF No. 8]. Plaintiff subsequently filed an amended complaint on November 18, 2013 [ECF No. 14], which superseded the original complaint and is the operative pleading in this case. Named as Defendant is Ulli Klemm, the Religion, Volunteer, and Recreational Services Administrator for the Pennsylvania Department of Corrections ("DOC").

Although the amended complaint is a rambling, often incoherent narrative containing a number of quotes from the Quran and other Islamic texts, it is apparent that Plaintiff is claiming that his First Amendment right to free exercise of religion, the First Amendment Establishment Clause, and his rights under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc, *et seq.*, have been violated as a result of a DOC policy that places restrictions on the rights of Muslim inmates to attend the two feasts of the Ramadan

---

[1] The parties have consented to having a United States Magistrate Judge exercise jurisdiction over this matter. [ECF Nos. 3, 18).

holiday.[2] In particular, Plaintiff challenges DOC policy DC-819, allegedly promulgated by Defendant, which: (i) restricts participation in the Eid-at-Fitr feast to those inmates who have participated in Ramadan for the entire month and who pay the cost of the feast with a cash slip that must be submitted by a certain advance date; (ii) restricts participation in the Eid-al-Adha feast to those inmates who participated in the yearly Ramadan services and who submitted a cash slip; and (iii) prohibits participation in either feast by inmates who are in disciplinary custody in the Restricted Housing Unit. As relief for his claims, Plaintiff seeks injunctive relief, and compensatory and punitive damages.

On December 2, 2013, Defendant filed a motion to dismiss, or, in the alternative, motion for a more definite statement [ECF No. 15], asserting, *inter alia*, that Plaintiff has failed to state a claim upon which relief may be granted. Plaintiff has since filed a brief in response to Defendants' motion, essentially re-asserting the allegations of the amended complaint. [ECF No. 22]. This matter is now ripe for consideration.

### B.  Standards of Review

#### 1.  Motion to Dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41

---

[2] Although Plaintiff includes the Americans with Disabilities Act ("ADA") in the title of his amended complaint, he fails to set forth any allegations relating to a disability or an ADA violation. Thus, the Court will disregard Plaintiff's

(1957)).  See also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint.  See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Nor must the court accept legal conclusions set forth as factual allegations.  Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986).  "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).  "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556.

The Third Circuit Court has prescribed the following three-step approach to determine the sufficiency of a complaint under Twombly and Iqbal:

---

mention of the ADA in the heading.

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011), citing Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 129 S.Ct. at 1947, 1950); see also Great Western Mining & Min. Co. v. Rothschild LLP, 615 F.3d 159, 177 (3d Cir. 2010).

### 2. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520-521(1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### C. Discussion

#### 1. Free Exercise of Religion

Plaintiff claims that the DOC policy restricting access to the two feasts of Ramadan, allegedly promulgated by Defendant, violates his First Amendment right to free exercise of religion.

Despite their incarceration, prisoners have a First Amendment right to practice their religion. Bell v. Wolfish, 441 U.S. 520, 544 (1979). However, these constitutional rights are limited by the fact of incarceration as well as valid penological objectives. See O'Lone v. Shabazz, 482 U.S. 342, 348 (1987) (free exercise rights are "necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or maintain prison security"); Price v. Johnston, 334 U.S. 266, 285 (1948) ("Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.").

The evaluation of penological objectives in this context is "committed to the considered judgment of prison administrators," and to ensure appropriate deference to those judgments, courts review challenged prison regulations under a "reasonableness" test. O'Lone, 82 U.S. at 349, quoting Bell, 441 U.S. at 562; Turner v. Safley, 482 U.S. 78, 87-91 (1987). Courts generally accord great deference to prison officials' adoption and execution of policies, regulations, and practices relating to the preservation of internal order, discipline, and security within the prison environment. Thornburgh v. Abbott, 490 U.S. 401, 407-08 (1989); Turner, 482 U.S. at 85.

5

In our circuit, the policy at issue in this case, DC-819, was recently considered and upheld in response to a similar challenge in Banks v. Beard, 2013 WL 5465165 (M.D.Pa. 2013). In Banks, the Middle District Court held that the policy's restrictions on attendance at the Eid-al-Fitr and Eid-al-Adha feasts satisfies the Turner factors because: (i) requiring inmates to share the cost of purchasing food for the feasts serves the legitimate penological purpose of cost containment, since the food offered at the feast is not normally offered for regular meals and the First Amendment "does not require the government to subsidize" the exercise of religious rights; and (ii) Muslim inmates are still able to attend religious services, fast, and pray without restriction, apart from attending the feasts. Id. at *10. Significantly, the Banks court explained that "the Muslim religion does not compel participation in a feast or meal on either feast day. And, it is undisputed that Muslim inmates can fully practice their religion without attending because no religious group activities or prayers take place during the feasts." Id. at *8. See also Small v. Wetzel, 528 Fed.Appx. 202 (3d Cir. 2013) (holding that restricting feasts and nighttime meals to Muslim inmates who fully participate in the Ramadan fast satisfies the Turner factors and is a legitimate regulation of inmates' First Amendment rights); Hall v. Ekpe, 408 Fed.Appx. 385, 387-88 (2d Cir. 2010) (upholding the exclusion of a Muslim inmate from Ramadan activities because he did not attend three of four immediately preceding Friday prayer meetings).

This Court finds the foregoing case law persuasive and adopts the findings of the Middle District Court in Banks as to the constitutionality of DC-819's restrictions on attendance at the two feasts of Ramadan. Accordingly, Defendant's motion to dismiss Plaintiff's First Amendment free exercise of religion claim will be granted.

### 2. **Establishment Clause**

Plaintiff claims that the DOC policy at issue also violates the First Amendment's Establishment Clause because it "sets back" the Islamic religion.

The Establishment Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. The Supreme Court has set forth three tests for determining whether governmental action violates the Establishment Clause: the coercion test, the *Lemon* test, and the endorsement test. Mondrovich v. Allegheny Cnty., 385 F.3d 397, 400–01 (3d Cir.2004). The first of these, the "coercion" test, is not applicable to this case because it focuses primarily on government action in public education. See Freiler v. Tangipahoa Parish Bd. of Educ., 185 F.3d 337, 343 (5th Cir.1999), cert. denied, 530 U.S. 1251 (2000). The second test, named after the Supreme Court case, Lemon v. Kurtzman, 403 U.S. 602 (1971), is a three-prong approach that finds a challenged action unconstitutional if (1) it lacks a secular purpose, (2) its primary effect either advances or inhibits religion, or (3) it fosters an excessive entanglement of government with religion. Lemon, 403 U.S. at 612-13. Finally, the "endorsement" test modifies Lemon in cases involving religious displays on government property, which is not applicable here. Thus, of the three tests, the only one with any possible application to this case is Lemon. Indeed, it appears that Plaintiff is relying on the second approach of this test in arguing, in essence, that the primary effect of the implementation of DC-819 is to inhibit the Islamic religion. This claim, however, is without merit.

As previously discussed, DC-819 does not inhibit or interfere with any of the required religious practices of Islam, but merely places restrictions on who may participate in the two non-

compulsory feasts of Ramadan. This is not a violation of the Establishment Clause. Thus, Plaintiff's claim based upon the First Amendment's Establishment Clause will be dismissed.

### 3. **RLUIPA**

Finally, Plaintiff claims that Defendant's implementation of DC-819 violates RLUIPA because it allegedly denies him the ability to practice his own religious beliefs.

First, to the extent such claim is stated against Defendant in his individual capacity, it must be dismissed because RLUIPA does not permit actions against government employees in their individual capacities. Sharp v. Johnson, 669 F.3d 144, 153-55 (3d Cir. 2012). Furthermore, to the extent Plaintiff seeks to recover monetary damages against Defendant in his official capacity, this too will be dismissed because such relief is barred by the Eleventh Amendment.[3] Thus, Plaintiff's RLUIPA claim will be confined to a claim for injunctive relief only.

"RLUIPA [...] protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." Cutter v. Wilkinson, 544 U.S. 709, 721 (2005). RLUIPA provides, in relevant part, that no prison that receives federal funding shall impose a substantial burden on the religious exercise of a person confined to the prison even if the burden results from a rule of general applicability, unless the government demonstrates that the imposition of the burden on

---

[3] It is well settled that suits for damages by individuals against state governments, state agencies, or state officers acting in their official capacities are barred by the Eleventh Amendment. Kentucky v. Graham, 473 U.S. 159, 165-67 (1985).

that person is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc-1.

In order to establish a *prima facie* case, a plaintiff must "demonstrate"[4] that his "exercise of religion" was "substantially burdened." Id. "The burden of proving the existence of a substantial interference with a religious exercise rests on the religious adherent." Baranowski v. Hart, 486 F.3d 112, 124 (5th Cir. 2007). See also Washington v. Klem, 497 F.3d 272, 283 (3d Cir. 2007); 42 U.S.C. 2000cc.

The Third Circuit Court of Appeals has held that a "substantial burden" lies where:

>   1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; or
>
>   2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs.

Washington, 497 F.3d at 280 and n7 (capitalization in original) adopting the definition of "substantial burden" enunciated by the Fifth Circuit in Adkins v. Kaspar, 393 F.3d 559 (5th Cir. 2004). See also Heleva v. Kramer, 330 Fed. Appx. 406, 409 (3d Cir. 2009).

Once a plaintiff establishes a *prima facie* case, the burden shifts to the government to demonstrate that "application of the burden" to the plaintiff "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1.

Here, Defendant seeks dismissal of Plaintiff's RLUIPA claim, citing the Banks court's

---

[4] "Demonstrate" is defined by the statute as "meet[ing] the burdens of going forward with the evidence and or persuasion." 42 U.S.C. § 2000cc-5(2).

observation that "the Muslim religion does not compel participation in a feast or meal on either feast day." Banks, at *8. Thus, according to Defendant, Plaintiff "was never forced to choose between following his religion or receiving a benefit, as he could fully follow his religion whether or not he attended either feast." (ECF No. 16, Defendant's Brief, at 10). However, under RLUIPA, "Religious exercise" is defined as including "any exercise of religion, **whether or not compelled by, or central to, a system of religious belief**." 42 U.S.C. 2000cc-7(a) (emphasis added). The courts are barred from inquiring "into whether a particular belief or practice is 'central' to a prisoner's religion." Cutter v. Wilkinson, 544 U.S. 709, 725 n. 13 (2005). See also Adkins v. Kaspar, 393 F.3d 559, 570 (5th Cir. 2004) ("we are satisfied [that] the position we adopt today is faithful to both the text of the RLUIPA and Supreme Court precedent. Declining to inquire into whether a practice is central to an adherent's religion avoids the greater harm [...] of having courts presume to determine the place of a particular belief in a religion.").

Thus, Defendant cannot simply rely on his understanding that the Ramadan feasts are not compelled by the Muslim religion, since Plaintiff has alleged that participation at the feasts is central to his own religious beliefs, and that DOC policy DC-819 restricts him from participating in those feasts because he is indigent and, possibly, in the RHU, although the latter is unclear. This is sufficient to establish a *prima facie* case under RLUIPA. Thus, Defendant's motion to dismiss Plaintiff's RLUIPA claim will be denied to the extent Plaintiff seeks injunctive relief

only.⁵

An appropriate Order follows.

---

⁵ The Court acknowledges that Defendant has also argued that he is entitled to qualified immunity as to Plaintiff's RLUIPA claim, because the right at issue was not clearly established; however, as noted, the right claimed by Plaintiff is clearly defined by the statute itself, as well as by the Supreme Court in <u>Cutter</u>.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TYRONE PEELE, | ) | |
|       Plaintiff | ) | C.A. 13-200 Erie |
| | ) | |
|   v. | ) | |
| | ) | Magistrate Judge Baxter |
| ULLI KLEMM, | ) | |
|       Defendant. | ) | |

## ORDER

AND NOW, this 29th day of September, 2014,

IT IS HEREBY ORDERED that Defendant's motion to dismiss [ECF No. 15] is granted in part and denied in part as follows:

    1.    Defendant's motion to dismiss Plaintiff's First Amendment free exercise of religion and Establishment Clause claims is GRANTED and such claims are hereby DISMISSED;

    2.    Defendant's motion to dismiss Plaintiff's RLUIPA claim, insofar as it seeks to recover monetary damages against Defendant, is GRANTED and such claim for monetary damages is DISMISSED.

    3.    Defendant's motion to dismiss Plaintiff's RLUIPA claim, insofar as it seeks injunctive relief, is DENIED and said claim, as so limited, will be allowed to proceed beyond the pleading stage.

IT IS FURTHER ORDERED that Defendant's motion for more definite statement [ECF No. 15] is GRANTED insofar as Plaintiff is ORDERED to file a second amended complaint containing only those allegations relating to his RLUIPA claim for injunctive relief. In particular, Plaintiff is directed to specifically state the ways in which he personally has been allegedly restricted from practicing his religious beliefs as a result of the implementation of DOC Policy DC-819. Plaintiff is ORDERED to file his second amended complaint with this Court by October

31, 2014, and Defendant must file a response to the second amended complaint within twenty days after it is filed.

                                                      s/Susan Paradise Baxter
                                                     SUSAN PARADISE BAXTER
                                                     United States Magistrate Judge